IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DESKTOP ALERT, INC., | * |
| Plaintiff | * |
| v. | * Civ. No. MJM-22-3337 |
| ALERTUS TECHNOLOGIES, LLC, | * |
| Defendant. | * |

* * * * * * * * * *

**MEMORANDUM OPINION**

Desktop Alert, Inc. ("Desktop" or "Plaintiff") filed this civil action against Alertus Technologies, LLC ("Alertus" or "Defendant") for patent infringement. ECF 1 & 26. This matter is before the Court on Defendant's Motion to Dismiss (ECF 27), Plaintiff's Motion for Partial Summary Judgment (ECF 32),[1] and Plaintiff's Motion for Leave to File a Surreply (ECF 34). The motions are ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall deny each of the pending motions.

**I.     BACKGROUND[2]**

Plaintiff is incorporated in the state of New York, with its principal place of business in Chatham, New Jersey. Am. Compl., ECF 26, ¶ 1. Defendant is a limited liability company organized in Maryland, with its principal place of business in Baltimore, Maryland. *Id.* ¶ 2. Plaintiff is the creator of Desktop Alert, "a network-based mass notification platform for sending

---

[1]     Plaintiff's Motion for Partial Summary Judgment is styled in the alternative to its opposition to Defendant's Motion to Dismiss. ECF 32.

[2]     The facts described herein are drawn from allegations in the Amended Complaint (ECF 26) and documents attached to the original Complaint (ECF 1).

1

messages to individual computers over a virtual, public, or private network," which was first released to the public in August 2003. *Id.* ¶¶ 5–6. Sometime thereafter, Defendant began offering its own program, entitled "Alertus Desktop." *Id.* ¶ 12. Later, Defendant renamed its program "Alertus Desktop Alert." *Id.* ¶ 13.

In or around 2009, Plaintiff developed a technique using the Desktop Alert program that "enabled it to receive time sensitive and critical 'pull' or 'polling' requests from one or more of the clients seeking the status of alert messages being sent to and received by the central server connected to the client via a network." *Id.* ¶ 8. This technique "overcame a critical shortcoming" in the prior art. *Id.* ¶ 9. Plaintiff filed a provisional patent application for this method on July 1, 2010. *Id.* ¶ 16. The United States Patent and Trademark Office granted the application and issued Patent No. 9,172,765 ("the '765 Patent") on October 27, 2015, of which Plaintiff is the present owner. *Id.* ¶¶ 9–11. Plaintiff provided notice of its patent application through two press releases, dated February 21, 2014, and January 22, 2016. *Id.* ¶ 38; ECF 1-5 (press releases).

The '765 Patent contains two Independent Claims: Claims 1 and 10. ECF 1-1 ('765 Patent) at 12–14. Independent Claim 1 recites the following:

> An improved method for the dissemination of an alert message to a plurality of personal computers using a network communications protocol, said computers comprising clients, each said clients subscribing to a central server, said server comprising an alert message cache, said server adapted to receive and store alert messages, and said server adapted to generate and store alert ID numbers, said method comprising,
> a first triggering step comprises the use of a HTTP packet comprising a request for a Boolean value relating to whether there are new alert messages and said packet comprises approximately 20 bytes,
> a second step wherein said client contacts the central server and requests the value of said alert ID number in said memory, said value reflecting the number of alert messages received by said central server,

> a third step wherein said server transmits said value to said client,
>
> a fourth step wherein said client compares a stored value at the client with the value of the transmitted alert ID number, and
>
> if said transmitted value exceeds said stored value, a fifth step wherein said client transmits a second message to said server and requests for the server to transmit all unread alert messages in a GetUnread Alerts request from said server that are specific to said client, and
>
> if there are unread alert messages specific to said client in said server, a sixth step wherein said server sends to client all unread alert messages specific to the client, and,
>
> a further step wherein said client updates the stored value in its memory to reflect the number of additional unread alert messaged transmitted from said server to said client in response to said second message, and
>
> wherein, upon the reception of said unread alert messages in said sixth step, said alert messages are in instant message format and said client opens a window on a display panel to display said alert messages,
>
> wherein said communications protocol comprises protocols for the transmission of messages over the internet.

*Id.* at 12:37–13:8. Independent Claim 10 similarly recites the following:

> A system for providing alert messages to a plurality of clients using a polling-based network, said system comprising a plurality of clients, at least one server in communication with said clients using a network connection, said central server provided with input devices to receive alert messages, and a database, said database for storing said alert messages, and said processor having programming instructions to create and store an alert ID value corresponding to alert messages Stored in said database, and said clients adapted to communicate with said server using an RPC communications protocol wherein said protocol further comprises a first triggering step comprises the use of a HTTP packet comprising a request for a Boolean value relating to whether there are new alert messages and said packet comprises approximately 20 bytes, and
>
> further communication from said client to said server requesting a GetAlert Messages using a SOAP communications protocol and wherein said client is transmitted an Alert ID message value from said server to said client, and if said Alert ID message value matches a stored message value, the client will further request from said server any alert messages to which it subscribes, and in response to said requests, said server transmits any unread alert messages and said unread alert message are in instant message

3

>>format and upon the client's reception of said unread alert messages said client opens a window on a display panel at said client, and
>>>wherein said communications protocol comprises protocols for the transmission of messages over the internet.

*Id.* at 13:34–14:24.

According to Defendant's co-founder Blake Robertson, up until December 2014 (when he left the company), Defendant's program suffered from server overuse during client requests, which would have been remedied by Plaintiff's patented technique. Am. Compl. ¶ 14 (citing ECF 1-3). Around May 2020, Plaintiff's CEO collaborated with employees of Defendant, during which Plaintiff's "code and know-how for methods" were disclosed to Defendant. *Id.* ¶¶ 15–16. At the time Robertson left Defendant in December 2014, its program's polling intervals were between ten and thirty seconds. *Id.* ¶ 23 (citing ECF 1-3). However, in a 2022 webinar, Defendant claimed to have polling intervals of as little as one second, *id.*, and in advertisements, it described its program as able to "dynamically adjust polling intervals to optimize notification speed while maintaining critical stability," *id.* ¶ 21 (citing ECF 1-2) (brackets removed).

Plaintiff claims, upon information and belief, that Defendant uses a Boolean value polling method similar to that described in Claim 1 of the '765 Patent, and that it was able to reduce its polling interval to one second by following the steps and methods found within the '765 Patent. *Id.* ¶¶ 22, 24–25, 30–33.

Plaintiff filed an initial Complaint for patent infringement against Defendant on December 13, 2022, ECF 1, and was granted leave to file an Amended Complaint on June 2, 2023. ECF 25 & 26. Defendant filed a Motion to Dismiss the Amended Complaint. ECF 27. Plaintiff filed a Response in Opposition to the Motion to Dismiss or, alternatively, a Motion for Partial Summary Judgment, ECF 32, to which Defendant filed a Reply in Support of its Motion to Dismiss, ECF 33. Plaintiff filed a Motion for Leave to file a Surreply or, in the alternative, a Reply in Support of

its Motion for Partial Summary Judgment, ECF 34, to which Defendant filed a Response in Opposition, ECF 35. On June 28, 2024, Plaintiff filed a Notice of Supplemental Authority, ECF 36, attaching a decision of the Patent Trial and Appeal Board ("TTAB") denying Defendant's request to institute an *inter partes* review, ECF 36-1.[3] The foregoing motions are ripe for disposition.

## II.   STANDARD OF REVIEW

### A.  Motion to Dismiss

Under Rule 8(a)(2) of Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss a complaint for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the]

---

[3]   The TTAB examined whether the claims asserted in the '765 Patent were obvious in light of the prior art under 35 U.S.C. § 103. *See* ECF 36-1.

actual proof of those facts is improbable and . . . a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court may consider, at the motion to dismiss stage, documents "explicitly incorporated into the complaint by reference," "those attached to the complaint as exhibits," and "document[s] submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as [they were] integral to the complaint and there is no dispute about [their] authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023) (cleaned up).

### B. Conversion of a Motion to Dismiss to Motion for Summary Judgment

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56[,]" but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The U.S. Court of Appeals for the Fourth Circuit "has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery." *Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278, at *4 (D. Md. Mar. 28, 2022) (citing *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)).

Converting a motion to dismiss to a summary judgment motion is not appropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. Du Pont de Nemours & Co.*, 637 F.3d at 448. The party opposing conversion may file a declaration pursuant to Rule 56(d) explaining the reasons why "it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Yet failure to file such an affidavit is "not necessarily fatal where the 'nonmoving party has adequately informed the court that . . . more discovery is necessary.'" *Sol v. M&T Bank*, --- F. Supp. ----, 2024 WL 327086, at *4–5 (D. Md. Jan. 29, 2024) (quoting *Harrods*, 302 F.3d at 244–45); *see also Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017) (courts have "complete discretion" to deny conversion even where no Rule 56(d) affidavit has been filed). Generally, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of

7

the summary judgment procedure" is necessary. 5 Wright & Miller, Fed. Prac. & Proc. § 1366 (3d ed. 2004).

### C. Motion for Summary Judgment

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis removed).

A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences drawn from them, in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249.

### D. Motion for Leave to File a Surreply

"Surreplies are highly disfavored in this District." *Roach v. Navient Sols., Inc.* 165 F. Supp. 3d 343, 351 (D. Md. 2015). Surrreplies are not permitted unless so ordered by the court pursuant to Local Rule 105.2.a and when the "moving party would otherwise be unable to contest matters presented to the court for the first time in the opposing party's reply." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 550 (D. Md. 2021) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003)); *see also Meyer v. DynCorp Int'l, LLC*, Civ. No. GJH-19-3412, 2020 WL 5513436, at *3 (D. Md. Sept. 14, 2020) (denying motion for leave to file surreply where the reply "did not raise new issues that could not have been anticipated beforehand, and instead merely provided additional legal authority and development of its prior arguments."); *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013) (the purpose of a surreply is not simply to have the last word). Additionally, "[a] party moving for leave to file a surreply must show a need for a surreply." *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, Civ. No. RDB-12–2109, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013) (citing L. R. 105.2(a)).

### III. ANALYSIS

#### A. Summary Judgment

Defendant submits as an attachment to its Motion to Dismiss a redacted letter from its counsel to Plaintiff's counsel in which, Defendant claims, its counsel "put [Plaintiff's counsel on notice] that the '765 Patent is invalid under § 101 *before* Desktop sought leave to amend." Def. Mem. at 19 (emphasis in original); ECF 27-3 (letter). Plaintiff requests that the Court convert Defendant's Motion to Dismiss into one for summary judgment on account of Defendant attaching material outside the pleadings. Pl.'s Opp'n at 1–2 (citing ECF 27-3). Additionally, Plaintiff moves for partial summary judgment in its favor on the validity of the '765 Patent and submits a portion

of the prosecution history for the '765 Patent for the Court's consideration on summary judgment. ECF 32-2.

The Court declines Plaintiff's requests. The letter attached to Defendant's motion has no bearing on the issue of patent eligibility but is instead directed at whether a dismissal of this case with or without prejudice would be more appropriate. *See* Def. Mem. at 19. Moreover, although Defendant has not filed a Rule 56(d) affidavit stating a need for discovery, it opposes conversion. *See* Def.'s Reply at 14. And the Court finds that the factual record is not sufficiently developed to justify consideration of limited extrinsic materials that have been submitted by the parties to date. *See Harrods*, 302 F.3d at 245 (holding that district court's grant of summary judgment was premature, even in the absence of an affidavit detailing need for discovery); *Sol*, --- F. Supp. ----, 2024 WL 327086, at *5 (declining to convert motion even in the absence of a Rule 56(d) affidavit because it would be premature to rule on summary judgment); *ARCO Nat'l Constr., LLC v. MCM Mgmt. Corp.*, Civ. No. ELH-20-3783, 2021 WL 4148456, at *6 (D. Md. Sept. 10, 2021) (declining to convert motion to dismiss to summary judgment, even where the nonmoving party did not indicate the need for discovery, because the factual record was undeveloped).

For the foregoing reasons, and given the discretion afforded to the Court in deciding whether to convert a motion to dismiss into one for summary judgment, *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), Plaintiff's request to convert Defendant's Motion to Dismiss to a summary judgment motion and request for partial summary judgment are denied, and the prosecution history of the '765 Patent, *see* ECF 32-2, shall not be considered at this stage of the case.

### B. Plaintiff's Proposed Surreply

Plaintiff argues that its motion for leave to file a surreply should be granted because, in its reply, (1) Defendant for the first time "cites different parts of the '765 Patent at issue to suggest that the use of the words 'short cut' supports its patent eligibility position[,]" (2) Defendant inappropriately cites various "inapt cases," and (3) Plaintiff should be permitted to respond to Defendant's arguments against converting the Motion to Dismiss to a summary judgment motion. ECF 34 at 1–2 (citing Def.'s Reply at 4–6, 10–11, 13–14).

Although Defendant uses the term "short cut" for the first time in its reply, its related argument is not newly presented in the reply but is only the continuation of the logic argument raised in the Motion to Dismiss. *Compare* Def. Mem. at 14, 15 ("The specification's emphasis on 'logic' confirms that the focus of claim 1 is merely an abstract idea."), *with* Def.'s Reply at 5 ("[I]n light of the specification, the 'focus of the claimed advance over the prior art' is merely the 'short cut' to the prior art using 'logic' which is an abstract idea.") (citation omitted). Plaintiff had the opportunity to respond to this argument in its opposition but opted not to do so.

The Court has not been presented with a valid reason for permitting Plaintiff a second bite at the apple. *See Peria v. Wash. Metro. Area Transit Auth.*, Civ. No. GJH-20-0121, 2020 WL 5759764, at *3 (D. Md. Sept. 28, 2020) (rejecting plaintiff's motion for surreply where the "[d]efendant's [r]eply did not assert new facts or raise new issues that could not have been anticipated beforehand"). There is also no obligation in reply briefs to restrict citations to case law to that cited in prior briefing. Recasting arguments and citing new authorities in a reply are not, without more, grounds for permitting surreplies. *See Meyer v. DynCorp Int'l, LLC*, Civ. No. GJH-19-3412, 2020 WL 5513436, at *3 (D. Md. Sept. 14, 2020) ("[Parties] may [not] use any novel spin on a prior argument to justify continued rounds of briefing."). In the instant came, it is

apparent that, in requesting leave to file a surreply, "Plaintiff[] seek[s] merely to re-open briefing on the issues raised." *Dones v. Brennan*, 147 F. Supp. 3d 364, 373 (D. Md. 2015) (quoting *Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 467 (D. Md. 2008)).

Accordingly, Plaintiff's Motion for Leave to File a Surreply is denied. *See Tuckman-Barbee*, 2013 WL 1224484, at *6 (denying motion to file surreply because the moving party could have addressed the supposedly "new issues" earlier); *Khoury*, 268 F. Supp. 2d at 606 (same). The Court thus declines to consider Plaintiff's proposed surreply, ECF 34-1.[4]

### C. Patent Eligibility

Title 35 United States Code, Section 101 provides, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." However, the Supreme Court has "long held that . . . [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)); *see also Le Roy v. Tatham*, 14 How. 156, 175 (1853) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right."). Patent laws are purposed "[t]o promote the Progress of Science and useful Arts," U.S. Const., Art. I, § 8, cl. 8, and the Court has "'repeatedly emphasized this . . . concern that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity [i.e., laws of nature, natural phenomena, and abstract

---

[4] Because conversion to summary judgment has been denied *supra*, the Court declines Plaintiff's request in the alternative to construe the proposed surreply as a reply in support of the motion for partial summary judgment. *See* ECF 34 at 1.

12

ideas,]" *Alice*, 573 U.S. at 216 (quoting *Mayo Collab. Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 85 (2012)). Nonetheless, "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* at 217 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)).

A patent, once issued, "is presumed valid." *Murj, Inc. v. Rhythm Mgmt. Grp., LLC*, 622 F. Supp. 3d 109, 114 (D. Md. 2022) (citing 35 U.S.C. § 282). Nonetheless, "it is well established [] that a defendant in a patent infringement suit may move for dismissal under Rule 12(b)(6) because the patent in question concerns abstract ideas or the basic tools of scientific and technological work." *Burnett v. Panasonic Corp. of N.A..*, Civ. No. PX-17-236, 2017 WL 4947013, at *4 (D. Md. Nov. 1, 2017*), aff'd sub nom. Burnett v. Panasonic Corp.*, 741 F. App'x 777 (Fed. Cir. 2018) (citations omitted).[5]

Courts utilize a two-step analysis to determine patent eligibility. *See IBM v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (citing *Alice*, 573 U.S. at 217). First, the court must "determine whether a patent claim is directed to an unpatentable law of nature, natural phenomena, or abstract idea." *Id.* (citing *Alice*, 573 U.S. at 217). Second, the court must determine, if the patent is so directed, "whether the claim nonetheless includes an inventive concept sufficient to transform the nature of the claim into a patent-eligible application." *Id*. (internal citations omitted).

### 1. Representative Claims

In deciding questions of patent eligibility, courts need not analyze every claim in a patent where some claims may be deemed representative of the patent. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018); *Content Extraction & Transmission, LLC v. Wells Fargo Bank,*

---

[5]   District courts employ the precedent of the U.S. Court of Appeals for the Federal Circuit on questions of patent law. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365–66 (Fed. Cir. 2001) (internal citation omitted).

*N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).[6] In *Content Extraction*, the court found the patent's independent claims to be representative, as the dependent claims merely recited the independent claim plus additional limitations based on "[the] well-known, routine, and conventional functions of scanners and computers."[7] 776 F.3d at 1349.

In the instant case, Defendant argues that Independent Claims 1 and 10 of the '765 Patent are representative of the patent's dependent claims, while Plaintiff argues that Claims 3 through 8 are sufficiently different from Independent Claim 1 to call for separate analyses.[8] The Court agrees with Defendant. Apart from their recitation of Claim 1 (or, otherwise, Dependent Claims 4 or 6, which in turn recite Claim 1), the only limitation each of these dependent claims contains is use of

---

[6] "A 'patent claim' is the 'portion of the patent document that defines the scope of the patentee's rights.'" *Bee Warehouse, LLC v. Blazer*, 671 F. Supp. 3d 1347, 1356 n.1 (N.D. Ala. 2023) (quoting *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015)).

[7] "An 'independent claim' is a stand-alone claim that contains all the limitations necessary to define an invention. A 'dependent claim' refers to a previous claim and must add another limitation to the previous claim. A claim in dependent form incorporates by reference all the limitations of the claim to which it refers." *Bee Warehouse*, 671 F. Supp. 3d at 1356 n.1.[8]   Claims 3 through 8 are defined as follows:

[8]    Claims 3 through 8 are defined as follows:

> 3. The method recited in claim 1 wherein said communications between said clients and said servers uses a SOAP protocol.
>
> 4. The method recited in claim 1 wherein said first communications between said clients and said servers uses a HTTP protocol and said second message from said client requesting unread alerts uses a SOAP protocol.
>
> 5. The method recited in claim 4 wherein said first communications between said clients and said servers uses a HTTP GET protocol and said second message from said client requesting unread alerts uses a SOAP protocol.
>
> 6. The method recited in claim 1 wherein said communication proceeds according to an RPC protocol.
>
> 7. The method recited in claim 6 further comprises a RPC/ UDP protocol.
>
> 8. The method recited in claim 6 further comprises a RPC/TCP protocol.

ECF 1-1, 13:11–27.

conventional functions. For example, Dependent Claim 3 recites Claim 1 with only an additional limitation to a SOAP protocol, and Claim 4 recites Claim 1 with only additional limitations to SOAP and HTTP protocols, ECF 1-1 at 13, which are "well-known, routine, and conventional" computer functions. *Content Extraction*, 776 F.3d at 1349.

Independent Claim 1 is also representative of Claim 9,[9] and Independent Claim 10 is representative of Claims 11 through 13.[10] Claim 9 simply provides additional detail regarding the alert message described in Claim 1, providing no material differences that must be separately addressed. *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1318 (Fed. Cir. 2016). Further, Plaintiff has not responded to Defendant's contention that the Court need not separately analyze Claim 10 (or, by extension, Claims 11 through 13). *See* Def. Mem. at 9 n.8. As such, this Court need only consider Claim 1 in its 35 U.S.C. § 101 analysis. *See Mortg. Grader*, 811 F.3d at 1324 n.6 (finding a single independent claim to be representative even where the parties did not stipulate to such, because the patent holder failed to contend that the other claims differed

---

[9]   Claim 9 is defined as: "[t]he method of claim 1, wherein said alert message comprises: the date the message was received by said server, a time the message was received by said server, a date the message was sent to said client, a time the message was sent to said client, content of the message and combinations thereof." *Id.* at 13:28–33.

[10]   Claims 11 through 13 are defined as follows:

> 11. The system of claim 10, wherein said server further comprising an application programming interface controls the administrator interface and provides at least one instruction to the administrator interface for creating said alert messages to the user contact devices.
>
> 12. The system of claim 10, further comprising display devices at said clients and at said server wherein said client displays, display said alter [sic] messages.
>
> 13. The system of claim 10, wherein said database is an SQL database, MySQL database, an Oracle database, another industry standard database, or combinations thereof.

*Id.* at 14:25–36.

in any material way); *see also Alice*, 573 U.S. at 226 (noting that the systems claim is "no different" than the methods claim).[11]

### 2. *Alice* Test

For reasons explained below, the Court finds the Amended Complaint to have plausibly asserted an inventive concept contained within Claim 1 of the '765 Patent that is sufficient to satisfy *Alice* step two. Therefore, the Court declines to conduct an *Alice* step one analysis. *See CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021) ("We need not answer this question [of *Alice* step one], however, because even if we accept the district court's narrow characterization of the '903 patent claims, the claims satisfy *Alice* step two.") (citing *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1303 (Fed. Cir. 2016)); *Invitae Corp. v. Natera, Inc.*, No. CV 21-1147-LPS, 2021 WL 7209516, at *4–5 (D. Del. Nov. 30, 2021); *see also Personalized Media Commc'ns, LLC v. Netflix Inc.*, 475 F. Supp. 3d 289, 298 n.3 (S.D.N.Y. 2020) (citing cases where district courts follow this approach). Instead, the Court will assume without deciding that Claim 1 is directed to the abstract idea of transmitting information. *See* ECF 1-1, 3:8–17 (purporting to improve a polling-based message system and noting that polling models are used for the "timely updating of information, such as stock prices and weather"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (the collection, analysis, and presentation of information are mere abstract ideas) (citing cases).

At *Alice* step two, the district court is "to search for an inventive concept in precisely the factors that [the patent holder] argues comprises the inventive concept." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017). However, "the district court need not accept a patent owner's conclusory allegations of inventiveness." *IBM*, 50 F.4th at 1379. "Even if

---

11    The TTAB also found Claim 1 to be illustrative of the '765 Patent. ECF 36-1 at 4.

they did require the use of a computer, claims to 'an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way'" are insufficient at *Alice* step two. *Id.* (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)). In other words, "[c]laims that 'do not require an arguably inventive set of components or methods,' or 'a new source or type of information, or new techniques for analyzing it' will not pass *Alice* step [two]." *Murj*, 622 F. Supp. 3d at 117 (quoting *Elec. Power Grp.*, 830 F.3d at 1355). Still, "[a]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM*, 827 F.3d at 1350; *see Alice*, 573 U.S. at 217 (courts "consider the elements of each claim both individually and as an ordered combination") (internal citation omitted). "Viewed as a whole," the claims must "purport to improve the functioning of the computer" or "effect an improvement in any other technology or technical field." *Alice*, 573 U.S. at 225.

Defendant argues that Claim 1 must fail at *Alice* step two because it is made up of generic components like "clients," "server," "memory," and "display panel." Def. Mem. at 12. In *Hawk Technology Systems, LLC v. Castle Retail, LLC*, the asserted patent claim failed at *Alice* step two because the purported improvement was achieved through a generic ordering of ordinary computer components. 60 F.4th 1358 (Fed. Cir. 2023); *see also Elec. Power Grp.*, at 1355 (same). Similarly, in *BASCOM*, the court recognized that the claim at issue in that case was made up of similarly generic components like "ISP servers" and "computer networks." 827 F.3d at 1349–50. However, in contrast to *Hawk*, the *BASCOM* court held that the claim satisfied *Alice* step two because it could be read to achieve a purported technological improvement through an unconventional ordering of these otherwise commonplace processes. *Id.* at 1350.

17

Here, the Court finds that, like the patent holder in *BASCOM* and unlike that in *Hawk*, Plaintiff has plausibly alleged that Claim 1, through the use of the unconventional initial polling step, involves an unconventional ordering of computer processes that improves computer functioning. *See* Am. Compl. ¶¶ 17, 24–25; Pl.'s Opp'n at 6–7, 9–10, 19, 22. As described in Claim 1, the '765 Patent provides an "improved method" for disseminating alert messages to a network of computers that begins with a "triggering step" involving "a request for a Boolean value relating to whether there are new alert messages" to obtain. '765 Patent at 12:37–47. This triggering step uses a HTTP packet of approximately 20 bytes of payload before conventional polling communications and, according to the Amended Complaint, thereby achieves increased polling frequency and notification speed for new alert messages. *Id.* at 7:12–28, 12:37–47; Am. Compl. ¶¶ 17, 21–25. Akin to the claim at issue in *BASCOM*, Claim 1 "recite[s] a specific, discrete implementation of the abstract idea" of sending and receiving information. 827 F.3d at 1350.

The Court notes that, because each step of the method described in Claim 1 is numbered in a sequence or otherwise set to be performed at a prescribed time, Claim 1 is specifically limited to this unconventional and useful order of operations. ECF 1-1, 12:37–13:9; *see also Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 764 F.3d 1392, 1398–99 (Fed. Cir. 2014) ("[A] claim 'requires an ordering of steps when the claim language, as a matter of logic or grammar, requires that the steps be performed in the order written . . . .'") (quoting *TALtech Ltd. v. Esquel Apparel, Inc.*, 279 F. App'x 974, 978 (Fed. Cir. 2008)). The patent specification makes clear that Claim 1's first triggering step is necessary to achieve the purported improvement over the prior art. *Compare* ECF 1-1, 7:12–28 (explaining that the addition of the first triggering step increases the number of alerts per second while reducing strain on the database), *with Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328–29 (Fed. Cir. 2017) (finding that *Alice* step two is not satisfied where the

inventive concept has no relation to the purportedly unconventional limitations, describing the proffered limitations as "token post solution components").

Accordingly, the Court finds that Claim 1 of the '765 Patent satisfies *Alice* step two and is plausibly eligible for patent. Defendant's Motion to Dismiss must be denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF 27) is DENIED, and Plaintiff's Motion for Partial Summary Judgment (ECF 32) and Motion for Leave to File a Surreply (ECF 34) are DENIED. Defendant will be directed to file a response to the Amended Complaint within 28 days.

A separate Order shall follow.


  8/14/24                                              /S/
Date                                         Matthew J. Maddox
                                             United States District Judge