IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |   |                      |
|------------------------------|---|----------------------|
| DESKTOP ALERT, INC.,         | * |                      |
|                              | * |                      |
| Plaintiff                    | * |                      |
|                              | * | Civ. No. MJM-22-3337 |
| v.                           | * |                      |
|                              | * |                      |
| ALERTUS TECHNOLOGIES, LLC,   | * |                      |
|                              | * |                      |
| Defendant.                   | * |                      |
|                              | * |                      |

* * * * * * * * * *

**MEMORANDUM ORDER**

Desktop Alert, Inc. ("Desktop Alert") filed this civil action against Alertus Technologies, LLC ("Alertus") for patent infringement. ECF 1 & 26. This matter is before the Court on Defendant's Motion for Attorneys' Fees, Expenses, and Costs Pursuant to 35 U.S.C. § 285 (the "Motion for Attorneys' Fees"). ECF 70. Defendant filed a memorandum in support of the motion, attaching several declarations and exhibits. ECF 73. Plaintiff filed a response in opposition to the motion, attaching its own declaration and exhibits, ECF 74, and Defendant filed a reply, attaching an additional exhibit, ECF 75. The Court has reviewed the motion papers and exhibits and finds that a hearing is not necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2025). For the reasons set forth herein, the Motion for Attorneys' Fees is DENIED.

**I.     BACKGROUND**

The parties to this litigation are competitors in the field of electronic emergency notification services. In 2018 and 2019, Desktop Alert CEO Howard Ryan reached out to Alertus CEO Jason Volk multiple times expressing an interest in having Alertus acquire Desktop Alert. ECF 73-10 at 1–2, 8–10. Alertus declined to respond to these overtures. In January 2020, Alertus

1

filed suit in this District against Desktop Alert and Ryan asserting claims for trademark infringement, unfair competition, patent infringement, and breach of contract. *Alertus Technologies, LLC v. Desktop Alert Inc., et al.*, Civ. No. PWG-20-154 (the "2020 Litigation"), ECF 1, 16. The parties stipulated to dismissal of that action in September 2020. *Id.*, ECF 46, 47.

In January 2022, Ryan sent Volk an email stating simply, "You will be served," without further explanation. ECF 73-10 at 11. Desktop Alert filed its initial Complaint in the instant matter on December 23, 2022, alleging patent infringement. ECF 1.

The Complaint alleged that, in October 2025, Desktop Alert obtained a patent (the "'765 Patent") directed to a mass notification system that can provide alert messages from a central server to clients in a network of computers. *Id.* ¶ 10; ECF 1-1. The patented subject includes an initial "triggering step" using a 20-byte HTTP packet through which a central server receives "time sensitive and critical 'pull' or 'polling' requests" for a Boolean value from networked clients seeking the status of alert messages. ECF 1, ¶¶ 8, 17. Desktop Alert developed this technique in or around 2009 and filed its provisional patent application in July 2010. *Id.* ¶¶ 8, 16. In or around May 2010, Ryan and Alertus personnel collaborated on potential ventures through which Alertus had access to Desktop Alert's code and techniques such as those claimed in Desktop Alert's patent application. *Id.* ¶¶ 15, 16; ECF 4 at 7.

During the 2020 Litigation, Alertus's co-founder and former Chief Technology Officer, Blake Robertson, testified that as of December 2014, when he separated from the company, *id.* at 6, Alertus's alert notification product had between 10- and 30-second polling intervals due to the large packet sizes of client requests, and it could not maintain reduced polling intervals without straining the server, *id.* at 8–9. However, in a webinar on its Summer 2022 release, Alertus represented that its "Alertus Desktop" product had polling intervals as low as one second. ECF 1,

2

¶ 27. That statement by Alertus and other marketing messages reflecting apparent improvements to its alert notification system, which were corroborated by publicly available information, and Alertus's prior access to Desktop Alert's code and methods supported Desktop Alert's allegations of patent infringement. Specifically, Desktop Alert alleged that "Alertus Desktop" product benefited from an initial "triggering step using an approximately 20-byte HTTP packet comprising a request for a Boolean value relating to whether there are new alert messages," as claimed by Desktop Alert's patent, which allowed Alertus's system "to increase polling at the same or greater magnitude than that disclosed and claimed by the '765 Patent" *Id.* ¶¶ 23, 30. Desktop Alert alleged in the alternative that Alertus's system used "substantially the same function, in substantially the same way, to achieve the substantially same result." *Id.* ¶ 30.[1]

Desktop Alert's initial Complaint included allegations detailing publicly available polling code provided for Alertus's alert notification system. *Id.* ¶¶ 22, 24. In the course of settlement discussions during the months that followed the filing of this action, Alertus's counsel notified counsel for Desktop Alert that statements in the Complaint about Alertus's polling code were false and that the code reproduced in Paragraphs 22 and 24 of the Complaint "appear[ed] to be nearly identical" to publicly available source code developed and owned by Microsoft. ECF 73-4 at 5–7. In this letter, dated March 16, 2023, counsel for Alertus directed Desktop Alert's counsel to a link through which they could download "Alertus Desktop" and examine the system's HTTP packets, which "would reveal that they do not read on claim 1 [of Desktop's patent]." *Id.* at 3. Within approximately one week, Desktop Alert drafted an Amended Complaint that removed Paragraphs 22 and 24, among other modifications, and sent a copy to Alertus's counsel with a letter explaining

---

[1] Additional allegations from Desktop's operative pleading are summarized in Part I of the Court's Memorandum Opinion dated August 14, 2024, ECF 37 at 1–5, which is incorporated here by reference.

3

that Desktop Alert did not intend to state false information about Alertus's polling code. ECF 73-5. In the same letter, dated March 24, 2023, Desktop Alert's counsel noted that Desktop Alert could not have accessed the proprietary source code of Alertus's accused product to support its allegations because that source code was not publicly available. ECF 73-5 at 1. The letter further stated:

> [I]f you have proof that you are willing to share with us that demonstrates that the Altertus [sic] Desktop product does not use a request for a Boolean value relating to whether there are new alert messages in its system, and/or the requests use packets of hundreds of bytes for this function, as you have represented, please send to us a non-disclosure statement under which we and third parties retained for this matter may access and analyze this information and on that basis enable us to reconsider our claim.

*Id.* at 2. In a letter dated March 29, 2023, Alertus's counsel replied that the "proof" of non-infringement Desktop Alert sought was available by the public link sent in the March 16th letter and reflected in Robertson's 2020 deposition testimony. ECF 73-6 at 2. In subsequent communications, Desktop Alert's counsel explained that Alertus's proffered "proof" of non-infringement was insufficient because there was no evidence that the version of "Alertus Desktop" linked in the March 16th letter was exemplary of every version in actual and current use or that Alertus's server was not altering the HTTP code or cloaking the process between the client and the central server. ECF 74-2 at 1–4. The version linked in the March 16th letter used code dated from 2018, *see* ECF 74-5, leaving no assurance that it reflected the code in use after Alertus's Summer 2022 release. Alertus declined to disclose the relevant proprietary source code necessary to dispel Desktop Alert's infringement allegations, even under conditions of confidentiality, and notwithstanding the fact that the source code would be discoverable in the ensuing litigation. *See* ECF 73-5 at 1–2; ECF 74-2 at 6.

After Desktop Alert filed its Amended Complaint, Alertus moved to dismiss, arguing that the '765 Patent was ineligible and unpatentable. ECF 27, 27-1. Alertus did not argue that the Amended Complaint failed to state sufficient facts to plausibly allege infringement by the accused Alertus product, except insofar as the '765 Patent was not a valid patent. After briefing was completed, the Court entered a Memorandum Opinion and Order denying the motion to dismiss. ECF 37, 38. Thereafter, the parties conferred in an effort to reach agreement on a proposed scheduling order. During these discussions, Desktop Alert proposed bifurcation of discovery to permit early examination of the source code for the accused Alertus product, but Alertus rejected this proposal, and the parties ultimately agreed upon a standard schedule, ECF 74-1 at 3, which they proposed in October 2024, ECF 41. In November 2024, the Court substantially adopted the parties' proposed scheduling order, ECF 44, and entered a stipulated Protective Order, ECF 48. In February 2025, Desktop Alert identified an expert to examine the source code of the accused Alertus product in accordance with the Protective Order and requested potential dates for the examination. ECF 74-1 at 3. A dispute over the proposed expert was eventually resolved, and the parties arranged for an onsite review of the source code on April 8, 2025. *Id.* at 3–4. The expert provided oral reports on April 9th and 10th, and, based on those reports, Desktop Alert's counsel concluded that its patent infringement claims were not viable. *Id.* at 4. On April 17th, counsel for Desktop Alert advised Alertus's counsel that Desktop Alert intended to dismiss its claims. *Id.* On April 24th, the parties filed a joint motion for voluntary dismissal of the case, ECF 65, which the Court approved on the same date, ECF 68.

Thereafter, Alertus filed its Motion for Attorneys' Fees pursuant to 35 U.S.C. § 285, ECF 70, which is fully briefed. Alertus seeks an award of attorneys' fees in an amount totaling at least $350,334 and estimated litigation costs of $4,350. ECF 70 at 2; ECF 73 at 29. Desktop Alert does

5

not dispute the amount of fees sought but contests Alertus's entitlement to an award of fees, arguing that this case is not "so unusual" or "exceptional" to warrant such an award under § 285. ECF 74. Alertus filed a reply in support of its motion. ECF 75.

## II.     STANDARD OF REVIEW

A district court "may award reasonable attorney fees to the prevailing party[]" in "exceptional" patent infringement cases. 35 U.S.C. § 285. An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "'[T]here is no precise rule or formula' for deciding whether a case is 'exceptional.'" *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1375 (Fed. Cir. 2020) (quoting *Octane Fitness*, 572 U.S. at 554). Section 285 "imposes no specific evidentiary burden," but rather "demands a simple discretionary inquiry[.]" *Octane Fitness*, 572 U.S. at 557. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 554. The Supreme Court has identified a "'nonexclusive' list of 'factors[]'" district courts may consider to determine whether to award fees under a fee-shifting provision in the Copyright Act similar to § 285, which includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)); *see also Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 720–21 (4th Cir. 2015), *as amended* (Apr. 15, 2015).

### III.    ANALYSIS

Upon review and consideration of the case's history, as reflected in the court docket, and the parties' motion papers, declarations, and exhibits, I find that this action is not among those "exceptional cases" in which an award of attorneys' fees is justified under 35 U.S.C. § 285. Based on an analysis of what information was available to Desktop Alert at the time it filed suit, the patent infringement claims set forth in the Amended Complaint are neither objectively unreasonable nor frivolous. Once Desktop Alert obtained evidence in discovery that revealed the weakness of its infringement claims, it promptly took steps to dismiss the suit. Desktop Alert's prompt response to discovery of that evidence reflects the reasonable manner and good faith with which it prosecuted this case. *See Prism Techs. LLC v. VeriSign, Inc.*, 579 F. Supp. 2d 625, 629 (D. Del. 2008) ("[T]he Court finds [plaintiff's] withdrawal of its infringement claims regarding [defendant's] products once [plaintiff] understood that it could not obtain evidence sufficient to maintain these claims as evidence of [plaintiff's] good faith conduct of the litigation."). Alertus fails to show that, at any point during this litigation, Desktop Alert acted so unreasonably as to call for deterrence in the form of an approximate $350,000 attorneys' fee award against the plaintiff.

Alertus argues that Desktop Alert's infringement claims were exceptionally weak because they were founded upon Alertus's marketing statements, which it characterizes as "puffery"; the testimony of former CTO Robertson, who Alertus casts as "a former disgruntled Alertus employee"; and an inadequate pre-suit investigation. Alertus's arguments are unpersuasive.

First, it was not unreasonable for Desktop Alert to rely upon the facts it compiled from Alertus's own marketing statements, from its co-founder and former CTO, and from Desktop Alert's own experience working with Alertus suggesting that the "Alertus Desktop" system employed methods that infringed upon the '765 Patent. Statements Alertus made when marketing

7

the accused product after 2021 suggested substantial improvements in the system's ability to increase polling over how the system had previously operated, as reflected in Robertson's deposition testimony from 2020. Additionally, Alertus had access to information about Desktop Alert's code and techniques, including those claimed in the '765 Patent, that would have resulted in the improvements suggested by Alertus's marketing statements. Alertus apparently believes that its own marketing statements and the testimony of its co-founder and former CTO were not credible sources of information about how the accused product operated. Alertus is entitled to that position, but that position did not bind Desktop Alert in its decision on whether to file suit.

Second, the results of what patent infringement investigation Desktop Alert conducted before filing suit are referenced in its pleadings and supported plausible patent infringement claims. *See* ECF 1, ¶¶ 12–46; ECF 26, ¶¶ 12–41. That investigation involved drawing from what information was available to Desktop Alert (including marketing statements and Robertson's testimony) certain inferences and conclusions about how the accused Alertus product operated by 2022. The Amended Complaint reflects Desktop Alert's pre-suit comparison between key claims in the '765 Patent and reasonable conclusions it made about how "Alertus Desktop" operated in 2022, considering what information was available to Desktop Alert when it filed suit. Based on the information it had and the patent claim analysis it conducted, it was not unreasonable for Desktop Alert to conclude that the Alertus product likely infringed the '765 Patent.

If Desktop Alert's pre-suit investigation was as deficient as Alertus now asserts and not adequate to support plausible, good-faith claims of patent infringement, the Court would expect Alertus to have moved to dismiss the Amended Complaint for insufficient pleading of infringing conduct. Alertus did not move to dismiss the Amended Complaint on that basis. The motion to dismiss Alertus filed was founded upon arguments that the '765 Patent is not valid, *see* ECF 27,

8

27-1, not that the results of Desktop Alert's pre-suit investigation, as reflected in its pleading, failed to support reasonable inferences of infringement. Alertus does not offer any persuasive justification for its decision not to seek dismissal on this basis at the outset of this case. If they had merit, the same arguments Alertus presses now in its assertion that Desktop Alert's pre-suit investigation was not reasonable would have supported dismissal of the case in its entirety under Federal Rule of Civil Procedure 12(b)(6), before Alertus incurred most of the approximate $350,000 in attorneys' fees it now seeks as an award under 35 U.S.C. § 285. But, again, Alertus did not make any such argument in its motion to dismiss. *See* ECF 27-1. Even if it had, however, the Court finds the facts gathered and outlined in the Amended Complaint sufficient to state plausible claims of patent infringement. *See generally* ECF 26.

To be sure, Desktop Alert's information before filing suit was far from perfect or complete, but the incompleteness of its pre-suit information was no fault of Desktop Alert. Other courts have recognized "unique challenges" presented in conducting pre-suit investigations of suspected infringement of software patents:

> In non-software patent cases, plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit. But, there are times when plaintiffs' preparation is restricted by defendants' sole possession of the information plaintiffs need. Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself. From this manifestation, plaintiffs must somehow divine whether the defendants' code infringes. Although defendants vigorously and rightly guard their source code, until plaintiffs have access to it, plaintiffs are typically unable to give highly specified infringement contentions.

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560–61 (E.D. Tex. 2005). Likewise, here, at the time it filed suit, Desktop Alert lacked access to Alertus's source code—the

precise information it needed to establish conclusively whether the accused Alertus product infringed the '765 Patent. That information was in Alertus's exclusive possession and control. Without access to Alertus's source code, it was not unreasonable for Desktop Alert to rely upon its own experience working with Alertus, Alertus's former CTO's statements about how its alert notification system operated before his separation from the company, and Alertus's public statements about how its system later operated, and to conclude from this information that Alertus infringed the '765 Patent. *See Merial Ltd. v. Intervet, Inc.*, 437 F. Supp. 2d 1332, 1335 (N.D. Ga. 2006) ("Regarding [plaintiff's] investigation prior to suit, there is evidence that [plaintiff's] attorneys performed a good faith, informed comparison of the claims of the '601 Patent against the information then available in the market, the description of [defendant's] product in the USDA's Conditional License. There is also evidence that [plaintiff] tried to obtain a sample of [defendant's] vaccine, but was unable to because the vaccine was not generally available to the public.").

Additionally, during early settlement communications between the parties' counsel, when counsel for Alertus maintained that Desktop Alert's claims about the operation of the accused product were false, Desktop Alert's counsel suggested that Alertus permit review of the source code under any terms Alertus might propose to protect the confidentiality of that information. Alertus contends that Desktop Alert's early "demand" for the "Alertus Desktop" source code was unreasonable. I am not persuaded. While I do not take lightly Alertus's interest in protecting its trade secrets, Alertus could have expected that the source code would have eventually become discoverable in this litigation once formal discovery commenced.[2] Once the Scheduling Order was

---

[2] I note that, during this period of the parties' settlement discussions, Alertus's motion to dismiss, ECF 27, had not yet been filed or resolved, delaying the start of formal discovery. But the Court ultimately

10

entered, the parties promptly agreed to terms of a Protective Order to protect the source code. The same confidentiality terms could have been reached at earlier stages of the litigation—as early as March 2023, when Desktop Alert's counsel suggested protected disclosure of the source code. If Alertus had agreed to protected disclosure of the source code at the early point Desktop Alert's counsel proposed it, Alertus could have avoided a significant share of the attorneys' fees and litigation expenses it incurred by the time the case was voluntarily dismissed.[3]

Alertus emphasizes that several of the key allegations in Desktop Alert's Amended Complaint were made "on information and belief." There is nothing defective or unreasonable about alleging facts "on information and belief" when those facts rest in the exclusive control of an opposing party and when they are supported by inferences drawn from other facts. *Cf. Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) ("[U]sing 'upon information and belief' as a pleading device survives a motion to dismiss only where 'the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'") (quoting *Malibu Media, LLC v. Doe*, Civ. No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014), and *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

I am not persuaded by Alertus's contention that Desktop Alert should have satisfied itself that its infringement claims lacked merit based on an examination of the publicly available version of "Alertus Desktop" linked in the letter from Alertus's counsel dated March 16, 2023. *See* ECF

---

found this motion to lack merit and denied it. ECF 37 & 38. Alertus points to certain strategic purposes this motion served, *see* ECF 75 at 12, but does not contend that the Court erred in denying the motion.

[3] I do not mean to suggest that Alertus acted unreasonably in declining protected disclosure of its source code during the parties' early settlement discussions. Alertus is entitled to decide the manner, means, and timing of its efforts to protect its sensitive and confidential information. But Desktop Alert cannot be held accountable the delays and expenses that resulted from the decision Alertus made not to disclose at an early stage what naturally became subject to discovery at a later stage of the litigation.

73-4. That public version of the software was from 2018, and, as explained in a subsequent letter from Desktop Alert's counsel dated May 12, 2023, there were no assurances that the linked version would reveal the actual current operation of the accused product, *see* ECF 74-2. Desktop Alert's decision not to accept Alertus counsel's assertions of non-infringement at face value was not unreasonable.

Alertus makes much of the fact that Desktop Alert's initial Complaint relied in part on code developed and owned by Microsoft and not by Alertus. *See* ECF 1, ¶¶ 22, 24. While it is not entirely clear how or why the error in Paragraphs 22 and 24 of the initial Complaint was made, it was promptly corrected by the drafting of an Amended Complaint from which the false or mistaken polling code was excised. *See* ECF 23-3 & 73-5. Desktop Alert's prompt efforts to correct the error are a sign of its good faith. I have been presented with no reason to believe that this false information about Alertus's polling code was included in the initial Complaint intentionally or in bad faith. Alertus maintains that this error could have been easily detected through a cursory Google search, but that fact supports a belief that the error was inadvertent. I find it unlikely that Desktop Alert would have purposefully included information in its Complaint that was so easily confirmed to be false. Without more, Desktop Alert's mistaken inclusion of the Microsoft code in the initial Complaint does not automatically undermine the reasonableness its pre-suit infringement analysis.

Next, in an effort portray the way in which Desktop Alert prosecuted its case as unreasonable, Alertus complains about Desktop Alert's nomination of a conflicted expert to examine Alertus's source code and delays in that eventual examination. Again, Alertus's arguments are misplaced. First, I note that, after initially objecting to Desktop Alert's nominated expert, Alertus soon withdrew its objections, within a matter of two weeks. It appears that

whatever potential conflict of interest initially concerned Alertus was not significant enough for Alertus to seek relief from the Court. Second, Desktop Alert's counsel noted that scheduling conflicts they and Desktop Alert's expert had during March 2025 caused modest delays in the expert's review of Alertus's source code. ECF 74-1 at 4. The delay in the expert's review of the source code was not so long as to suggest any dilatory tactics on Desktop Alert's part. I do not find that the delay resulted from any bad faith or litigation misconduct by Desktop Alert. To the contrary, Desktop Alert's counsel's proposal that the source code be examined in the weeks after filing suit suggests that Desktop Alert had no interest in delaying its expert's review of the source code.

Finally, I note Alertus's claims that this patent infringement action was contrived as a means of exerting leverage against Alertus in Desktop Alert's effort to "force" Alertus into a business transaction. I accept from the declaration from Alertus's CEO, Volk, and its exhibits that Desktop Alert's CEO, Ryan, was interested in selling Desktop Alert to Alertus in and around 2018 and 2019. I also accept from evidence presented that, once this suit was filed in late 2022, both Desktop Alert's counsel and its CEO sought terms of settlement that were favorable to Desktop Alert. There is nothing "exceptional" about any of this. 35 U.S.C. § 285.

In sum, I do not find Desktop Alert's litigating position at the outset of this case to have been exceptionally weak, and I do not find that the manner in which it litigated this case was exceptionally unreasonable. Once Desktop Alert obtained evidence that disproved its infringement allegations, it promptly advised Alertus of its intention to effect a voluntary dismissal. Desktop Alert had sought this evidence at a much earlier stage of the litigation, but, during that time, it remained in Alertus's exclusive control. Desktop Alert is not to blame for the time it took for it to obtain this evidence.

## IV. CONCLUSION

For the foregoing reasons, it is by the United States District Court for the District of Maryland hereby ORDERED that Defendant's Motion for Attorneys' Fees (ECF 70) is DENIED.

The Clerk SHALL CLOSE this case.


  2/4/26                                               /S/
Date                                              Matthew J. Maddox
                                                  United States District Judge